# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In the Matter of:

Case No. 15-44578

**SHANTA CORPORATION d/b/a**
**ST. ANNE'S CONVALESCENT**
**CENTER,**

Chapter 11

Judge Thomas J. Tucker

          Debtor.

_____/

**ORDER: (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S OPERATING ASSETS PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, FREE AND CLEAR OF ALL LIENS, CLAIMS AND ENCUMBRANCES TO SIGNATURE CARE CONSULTANTS, INC.; (II) AUTHORIZING AND APPROVING THE TERMS OF THE SALE AND PURCHASE AGREEMENT WITH JOINT ESCROW INSTRUCTION BY AND AMONG THE DEBTOR AND SIGNATURE CARE CONSULTANTS, INC., AND AUTHORIZING CONSUMMATION OF THE TRANSACTIONS CONTEMPLATED THEREIN INCLUDING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN SPECIFIED EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND THE ASSUMPTION OF CERTAIN SPECIFIED LIABILITIES; AND (III) GRANTING RELATED RELIEF**

Shanta Corporation d/b/a St. Anne's Convalescent Center (the "Debtor") filed its *Motion for Entry of an Order (I) Authorizing the Sale of Substantially All of the Debtor's Operating Assets Pursuant to Section 363 of the Bankruptcy Code, Free and Clear of All Liens, Claims and Encumbrances to Sterling Senior Care, LLC and Sterling Propco, LLC or the Winning Bidder, if not the Stalking Horse; (II) Authorizing and Approving the Terms of the Debtor's Stalking Horse Sale and Purchase Agreement with Joint Escrow Instruction by and Among the Debtor and Sterling Senior Care, LLC and Sterling Propco, LLC, or the Winning Bidder, if not the Stalking Horse, and Authorizing Consummation of the Transactions Contemplated Therein Including the Assumption and Assignment of Certain Specified Executory Contracts and Unexpired Leases and the Assumption of Certain Specified Liabilities; and (III) Granting Related Relief* [Dkt. No. 65]

(the "Sale Motion")[1]. The Sale Motion requests, pursuant to Sections 105(a), 363, 364 and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorization to sell substantially all of the Debtor's operating assets and assign certain executory contracts and unexpired leases (the "Assets") pursuant to the Stalking Horse Sale and Purchase Agreement with Joint Escrow Instruction dated as of May 15, 2015 [Dkt. No. 69] (the "Stalking Horse Purchase Agreement") or the purchase agreement entered into with the winning bidder, if not the Stalking Horse, pursuant to the Bidding Procedures (defined herein) (the "Purchase Agreement") (filed at Dkt. No. 155) (collectively, the sale of the Assets is sometimes referred to as the "Transaction" or "Transactions"); and this Court having considered the Debtor's *Motion for Entry of an Order (I) Establishing Bidding and Sale Procedures and (II) Setting Certain Dates and Deadlines in Connection Therewith and Approving the Form and Manner of Notice Thereof* and entered its Bidding Procedures Order [Dkt. No. 135] approving, among other things, the Bidding Procedures, and notice of the proposed sale and protections afforded to Sterling Senior Care, LLC and Sterling Propco, LLC, or the Winning Bidder, if not the Stalking Horse (collectively the "Stalking Horse"); and the sale process having been conducted in all material respects in accordance with the Bidding Procedures Order; and the Debtor having conducted an auction ("Auction") on August 19, 2015 whereby the Debtor determined that Signature Care Consultants, Inc. ("Buyer") submitted the highest or otherwise best bid for the Assets; and the Debtor having designated Buyer as the Winning Bidder pursuant to the Bidding Procedures Order; and a hearing having been held on August 26, 2015 (the "Sale Hearing") to consider approval of the sale of the Assets to Buyer (as well as the assumption by Buyer of the Assumed Contracts and Assumed Liabilities), pursuant to the terms and conditions of the Purchase

Agreement; and adequate and sufficient notice of the Bidding Procedures, the Purchase

Agreement, and the Transaction having been given to the parties in interest in this case; and such

parties having been afforded an opportunity to be heard at the Sale Hearing; the Court having

reviewed and considered: (i) the Sale Motion; (ii) the Debtor's *Motion for Entry of an Order (I)*

*Establishing Bidding and Sale Procedures and (II) Setting Certain Dates and Deadlines in*

*Connection Therewith and Approving the Form and Manner of Notice Thereof*; (iii) the

objections to the Sale Motion; and (iv) the arguments of counsel, and the evidence proffered or

adduced at the Sale Hearing;  and after due deliberation thereon, good and sufficient cause

appearing therefor; and it appearing that the relief requested in the Sale Motion, insofar as it

pertains to this Order, is in the best interests of the Debtor, its estate, its creditors, and other

parties in interest; and the Court being otherwise fully advised in the premises.

**THE COURT FINDS AND DETERMINES THAT**:

A.      This Court has jurisdiction over the Sale Motion under 28 U.S.C. §§ 157 and

1334 and this matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of this

case and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory basis for the relief sought in the Sale Motion are Sections 105(a),

363, 364, and 365 of the Bankruptcy Code, together with Bankruptcy Rules 2002, 6004, 6006,

and 9014.

C.      As evidenced by the Proofs of Service on file with this Court, due, proper, timely,

adequate, and sufficient notice and a reasonable opportunity to object or be heard with respect to

the Sale Motion and the relief requested therein, the Sale Hearing, the Transaction, and the

Auction have been provided in accordance with Bankruptcy Code Sections 102(1), 105(a), 363,

364 and 365 and Bankruptcy Rules 2002, 6004, 6006, and 9014, and in compliance with the

Bidding Procedures and the Stalking Horse Purchase Agreement, to interested persons and entities, including, but not limited to: (i) the Office of the United States Trustee; (ii) the Stalking Horse and its counsel; (iii) Buyer and its counsel; (iv) all entities known to Debtor that assert any liens against or other Interests in the Assets (or any portion thereof); (v) all parties known to the Debtor who expressed in writing to Debtor an interest in purchasing all or a portion of the Assets; (vi) the non-Debtor party to the Assumed Contracts; (vii) all relevant taxing and regulatory authorities; and (viii) the Committee; (ix) all entities that filed a notice of appearance and request for service of papers in these cases in accordance with Bankruptcy Rule 2002. Such notice was good, sufficient, and appropriate under the circumstances and no other or further notice of the Sale Motion, the Sale Hearing, the Transaction, the Bidding Procedures, the Sale Notice, or the Auction is or will be required.

D.      As demonstrated by the testimony and other evidence, if any, proffered or adduced at the Sale Hearing, the Debtor has marketed the Assets and conducted the sale process in compliance in all material respects with the Bid Procedures Order.

E.      No consents or approvals are required for Debtor to consummate the Transaction other than the consent and approval of this Court and those set forth in the Purchase Agreement. Neither the execution of the Purchase Agreement nor the consummation of the Transaction in accordance with its terms will constitute a violation of any provision of Debtor's organizational documents or any other instrument, law, regulation, or ordinance by which Debtor is bound.

F.      The bidding and related procedures established by the Bidding Procedures Order have been complied with in all material respects by Debtor, the Stalking Horse and Buyer. The Debtor received a Qualifying Bid from Buyer in accordance with the Bidding Procedures Order. An Auction for the Assets was held in material compliance with the Bid Procedures Order, and

Debtor has selected Buyer as the Winning Bidder. The Stalking Horse has declined to act as the Back-Up Bidder.

G.      Debtor is the legal and equitable owner of the Assets and, upon entry of this Sale Order, Debtor will have full authority to consummate the Transaction contemplated by the Purchase Agreement. The Purchase Agreement and the Transaction have been duly and validly authorized by all necessary corporate action, as the case may be, of Debtor.

H.      Approval of the Purchase Agreement and consummation of the Transaction is in the best interests of Debtor, the estate, creditors, and other parties in interest. The Debtor has demonstrated good, sufficient, and sound business purpose and justification and compelling circumstances for the Sale pursuant to Section 363(b) of the Bankruptcy Code prior to, in contemplation of, and outside of, a plan of liquidation.

I.      The Debtor, with the assistance of its professionals, diligently and in good faith marketed the Assets to secure the highest and best offer therefor by, among other things, making its books and records and the Assets available to potential bidders for due diligence and providing potential bidders access to management. In addition, the Debtor served the Bid Procedures Order, the Sale Motion, and the Stalking Horse Purchase Agreement to each of the entities that had previously expressed an interest in the Assets.

J.      The procedures set forth in the Bid Procedures Order, including the Auction, were designed to and did achieve a fair and reasonable purchase price constituting the highest and best offer obtainable for the Assets.

K.      A sale of the Assets at this time pursuant to Section 363(b) of the Bankruptcy Code will preserve the existing value of the Assets and maximize the Debtor's estate for the benefit of all constituencies.

L.      The Purchase Agreement was negotiated, proposed, and entered into by Debtor and Buyer without collusion, in good faith, and from arm's length bargaining position.  Buyer is not an "insider" of Debtor, as that term is defined in Bankruptcy Code Section 101.  Any relevant connections or relationships between any of the Debtor, the Buyer, and any parties that have, to the Debtor's knowledge, considered participating in the Auction or otherwise expressed interest in acquiring the assets of the Debtor have been disclosed, and the Debtor and Buyer have not engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under Bankruptcy Code Section 363(n).

M.      Buyer is in all respects a good faith buyer under Bankruptcy Code Section 363(m) and, as such, is entitled to all of the protections afforded thereby.  Buyer will be acting in good faith within the meaning of Bankruptcy Code Section 363(m) in consummating the Transaction.

N.      The consideration to be provided by Buyer pursuant to the Purchase Agreement: (i) is fair and reasonable; (ii) is the highest or otherwise best offer for the Assets; (iii) will provide a greater recovery for the Debtor's creditors than would be provided by any other practical available alternative; and (iv) constitutes a reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

O.      The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.

P.      The transfer of the Assets to the Buyer will be a legal, valid, and effective transfer of the Assets, and, except as expressly provided in the Purchase Agreement, will vest the Buyer with all right, title, and interest of the Debtor to the Assets free and clear of all liens ("Liens")

and claims, encumbrances, and interests of any kind (collectively, "Interests"), including, without limitation, the following: (i) interests that purport to give to any party or entity a right or option to affect any forfeiture, modification, right of first refusal, or termination of the Debtor's or the Buyer's interest in the Assets, or any similar rights; (ii) interests relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Business prior to the Closing Date; and (iii) interests relating to liens, claims, and encumbrances on the Assets or against the Debtor; provided, however, that all such Liens and Interests will attach to the net proceeds of the Sale, in order of priority as set forth herein.

Q.      The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Assets to the Buyer and the assignment of the Assumed Contracts to the Buyer were not free and clear of all Liens and Interests of any kind or nature whatsoever, or if the Buyer would, or in the future could, be liable for any of the Liens or Interests not expressly assumed by the Buyer.

R.      Subject to the provisions of this Order, the Debtor may sell the Assets free and clear of all Liens and other Interests of any kind or nature whatsoever because in each case, one or more of the standards set forth in Section 363(f)(1) through (5) of the Bankruptcy Code has been satisfied and all holders of Liens and other Interests are adequately protected by having their Liens and Interests, if any, attach to the net proceeds of the Sale attributable to the property against or in which they claim a Lien or Interests.

S.      The transfer of the Assets to the Buyer and assumption and assignment to the Buyer of the Assumed Contracts will not render the Buyer a "successor," or subject the Buyer to any liability whatsoever with respect to, or on account of, the operation of the Business prior to

the Closing Date or by reason of such transfer under any applicable laws, whether based in whole or in part, directly or indirectly, on any theory of law or equity, including without limitation: (i) any theory of implied assumption of any liabilities other than the Assumed Liabilities; (ii) any theory of constructive consolidation or merger of the Buyer and the Debtor: (iii) any theory that Buyer's acquisition is a mere continuation or reincarnation of the Debtor's business; (iv) any theory that the Transaction is fraudulent or lacks good faith; or (v) any other theory of antitrust, vicarious, successor, or transferee liability.

T.      The Debtor has demonstrated that it is an exercise of its sound business judgment to enter into the Transaction, consummate the Sale, and assume and assign the Assumed Contracts to the Buyer in connection with the consummation of the Sale. The assumption and assignment of the Assumed Contracts is in the best interests of the Debtor, its estate, and its creditors and other parties in interest. The Assumed Contracts is an integral part of the Assets and accordingly, the assumption and assignment of the Assumed Contracts is reasonable, enhances the value of the Debtor's estate, and does not constitute unfair discrimination.

U.      The consummation of the Transaction (the "Closing") pursuant to the Purchase Agreement will be a legal, valid, and effective transfer of the Assets to Buyer, and vests or will vest Buyer with all right, title, and interest in and to the Assets and assignment of the Assumed Contracts, free and clear of all Liens and Interests, other than Permitted Exceptions (as such term is defined in the Purchase Agreement) in accordance with Section 363(f) of the Bankruptcy Code.

V.      The Purchase Agreement is a valid and binding contract between Debtor and Buyers and will be enforceable according to its terms.

W.     All of the provisions of the Purchase Agreement are non-severable and mutually dependent.

X.     Notice of the Sale Motion has been provided to the Centers for Medicare & Medicaid Services an Agency of the United States Government ("CMS") which is the non-debtor party to an Assumed Contract.  The assignment of such Assumed Contract is contingent upon the consent of the non-debtor party.

Y.     Approval of the Management Agreement (as filed at Docket No. 163) is in the best interests of Debtor, the estate, creditors, and other parties in interest.  The Debtor has demonstrated good, sufficient, and sound business purpose and justification and compelling circumstances for entering into and assuming the Management Agreement.

Z.     The terms of the Management Agreement, including without limitation, the provisions that permit Buyer in its sole discretion to advance loans to the Debtor, and the Debtor to borrow from Buyer, to finance Debtor's business operations pending the closing of the Transaction are fair, reasonable, and in the best interest of the Debtor, its estate, its creditors, and other parties in interest, and have been negotiated in good faith and at arm's length, as that term is used at §364(e) of the Bankruptcy Code.

AA.     The Management Agreement is a valid and binding contract between Debtor and Buyer and will be enforceable according to its terms.

BB.     All of the provisions of the Management Agreement are non-severable and mutually dependent.

**IT IS ORDERED THAT:**

1.     The Sale Motion is **GRANTED** in all respects (other than with respect to matters already addressed by the Bidding Procedures Order), subject to the terms of this Order.

2.     Any objections to the entry of this Sale Order or the relief granted herein and requested in the Sale Motion that have not been withdrawn, waived or settled, and all reservations of rights included therein, are **OVERRULED**.

**APPROVAL OF THE PURCHASE AGREEMENT**:

**TRANSACTION AND ANCILLARY AGREEMENTS**

3.     The Purchase Agreement and the Transactions contemplated thereby are approved.

4.     Pursuant to Bankruptcy Code Sections 363(b) and (f) and 365(b), Debtor is authorized, empowered and, subject to the terms of the Purchase Agreement and this Sale Order, directed to: (i) execute, deliver, and perform under, consummate, and implement the Purchase Agreement together with all additional or ancillary instruments and documents that are requested by Buyer that may be reasonably necessary or desirable to implement the Purchase Agreement; (ii) to take any and all actions as it deems necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring the Assets and possession of the Assets to the Buyer; and (iii) to take such other action as may be necessary or appropriate to perform the obligations under the Purchase Agreement, including without limitation, any and all actions reasonably requested by Buyer.

5.     Pursuant to Sections 105(a), 363(f), and 365(b) of the Bankruptcy Code, upon the Closing:  (i) the transfer of the Assets to Buyer pursuant to the Purchase Agreement will constitute a legal, valid, and effective transfer of the Assets and will vest Buyer with all right, title, and interest in and to the Assets; (ii) the Assets will be transferred to Buyer free and clear of all Liens and Interests (other than the Permitted Exceptions) against the Assets, in accordance with Section 363(f) of the Bankruptcy Code, with any such Liens or Interests (other than the

Permitted Exceptions) to attach to the net proceeds of the Transaction, in the order of their priority, with the same validity, force, and effect that they had against the Assets prior to the entry of this Sale Order, subject to any rights, claims, and defenses that Debtor and all interested parties may possess with respect thereto; and (iii) the Assumed Contracts will be deemed assumed by Debtor and assigned to Buyer on the Closing Date, as provided in and contemplated by the Purchase Agreement. Without limiting the generality of the preceding sentence, the transfer of the Assets will be free and clear of all Liens and Interests of any government or governmental or regulatory body thereof, or political subdivision thereof, whether foreign, federal, state, or local, or any agency, instrumentality or authority thereof, or any court or arbiter (public or private). Notwithstanding anything to the contrary herein, the proceeds remaining after satisfaction of the broker's fee, the break up fee, the payment for QAAP and payment for the CMS Civil Monetary Penalty (the "Remaining Proceeds") in the approximate estimated amounts set forth in the Omnibus Reply Brief filed by the Debtor on August 25, 2015 which estimate will not be binding, will be divided between the Wayne County Treasurer, Detroit Water and Sewerage Department and the Internal Revenue Service in accordance with an agreement by the foregoing three creditors (the "Division Agreement"). Nothing herein will in any way affect the method of allocation and division to be agreed upon by the aforementioned parties. The Division Agreement will be presented to the Debtor in the form of a percentage to be paid to each such that the Debtor will distribute the remaining proceeds however much they are in accordance with the Division Agreement, and a statement will be filed with the Court setting forth the percentages to be paid to each.

6.      Pursuant to Sections 105(a), 363(b) and 364, Debtor is authorized to enter into the Management Agreement, and Debtor is authorized to obtain post-petition loans and advances

from Buyer, under and subject to the terms of the Purchase Agreement, in such amount or amounts as may be required from time to time to operate and manage the Facility (as defined in the Purchase Agreement during the term of the Management Agreement.

7.      In the event the transactions contemplated by the Purchase Agreement do not Close, then, pursuant to Section 364(c)(1) of the Bankruptcy Code, any indebtedness incurred by Debtor under any loans or advances made by Buyer pursuant to the Purchase Agreement will constitute allowed senior administrative claims against the Debtor with priority over all valid claims, administrative expenses, and all other valid claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

8.      The Debtor is authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments, and agreements in addition to the Management Agreement as Buyer may reasonably require to evidence the post-petition loans or which Buyer may otherwise deem necessary to effectuate the terms and conditions of this Sale Order, the Management Agreement, or the Transaction.  The Debtor must, simultaneously with Closing, satisfy all outstanding indebtedness to CMS currently estimated in the amount of $302,332.62 (*see* Claim 17) and to the Michigan Department of Health and Human Services' ("DHHS") in the currently estimated amount of $676,880.61.  These payments are conditioned upon obtaining required approvals and consents and are required pursuant to the Purchase

Agreement as pre-conditions to Closing and necessary to effectuate the transfer of the Assumed

Contract with CMS and the transfer of the certificates of need to the Buyer. After payment of

the aforementioned amounts, the net proceeds of the Transaction, upon Closing, must be

deposited into the client trust account of Debtor's counsel in a non-segregated account, and

distributed pursuant to further order of this Court.

9.      [intentionally omitted].

10.     All loans advanced, or that may be advanced, by Buyer may be used by the Buyer

as an offset against the purchase price for the Assets, without further order of the Court

authorizing the same.

11.     This Sale Order is and will be effective as a determination that all Liens and

Interests (other than Permitted Exceptions) will be and are, without further action by any person

or entity, released with respect to the Assets as of Closing.

12.     Except as expressly permitted or otherwise specifically provided by the Purchase

Agreement, the Management Agreement, or this Sale Order, to the greatest extent possible

consistent with the requirements of due process, and provided further that the Closing will have

occurred, all persons and entities, including but not limited to, all debt security holders, equity

security holders, governmental, tax, and regulatory authorities, lenders, customers, users,

warranty claimants, and trade and other creditors, holding Liens or Interests of any kind or nature

whatsoever in the Debtor or the Assets (whether legal or equitable, secured or unsecured,

matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or

out of, in connection with, or in any way relating to the Debtor, the Assets, or the transfer of the

Assets to the Buyer, are forever barred, estopped, and permanently enjoined from asserting

against the Buyer, its parents, affiliates, or subsidiaries, its successors or assigns, its property, or

the Assets, such persons' or entities' Liens or Interests, pursuant to any legal or equitable theory whatsoever and notwithstanding any provision of Collective Bargaining Agreements including, without limitation that (a) the Buyer is deemed to be a "successor" to the Debtor for any purpose, (b) the Buyer is deemed to have, *de facto* or otherwise, merged with or into the Debtor; or (c) that the Buyer is deemed to be a continuation of the Debtor.

13.     Buyer will not be required to assume any collective bargaining agreement to which Debtor is a party ("Collective Bargaining Agreements") or be liable for any claims demands or liability of any kind or nature arising out of the Collective Bargaining Agreements including but not limited to any provision contained in the Collective Bargaining Agreements purporting to impose liability on Buyers for not assuming the Collective Bargaining Agreement.

14.     To the greatest extent allowed by applicable law, except as expressly provided in the Purchase Agreement, the Buyer is not assuming nor will it, in any way whatsoever, be or be deemed to be liable or responsible, as successor or otherwise, for any Liabilities of the Debtor, or any Liabilities in any way whatsoever relating to or arising from the Debtor's assets, business, or operations, or by virtue of the conveyance of the Assets to Buyer.

15.     The Assumed Contract will be assumed and assigned to Buyer pursuant to Section 365 subject to approval of CMS.

16.     Any remaining funds from the Hold Back Amount (as defined in the Purchase Agreement)[1] must be paid by the Buyer to the client trust account of Schafer and Weiner, PLLC ("S&W"), and S&W must pay such funds to the Wayne County Treasurer, Detroit Water and Sewerage Department and the Internal Revenue Service in such percentages and in such manner as will be set forth in the Division Agreement. Notwithstanding anything to the contrary herein

---

[1] Terms used in this Order not defined herein have the meanings ascribed to such terms in the Sale Motion, the Purchase Agreement, or the Second Amended Combined Plan of Liquidation (Docket #126) (the "Plan").

or in the Purchase Agreement, the Hold Bank Amount is increased to $150,000, and DHHS agrees to limit any right of recoupment against Buyer that it may have to $150,000, with the additional $50,000 to be paid by the Buyer. In the event that the Hold Back Amount is not utilized by the Buyer pursuant to the Purchase Agreement, $100,000 of the Hold Back Amount will be paid to the Debtor pursuant to this Order and $50,000 will be returned to the Buyer. In the event that any of the Hold Back Amount is utilized by the Buyer pursuant to the Purchase Agreement, such amount will first be credited from the $100,000 of the Hold Back Amount to be paid to the Debtor pursuant to this Order and then, if in excess of $100,000, to the $50,000 to be returned to the Buyer. Notwithstanding anything to the contrary herein or in the Purchase Agreement, the Hold Back Amount must be paid to the estate on the earlier of the date that Buyer is satisfied that there are no remaining claims subject to the Hold Bank Amount, or three years from the Closing Date.

17. Notwithstanding anything to the contrary in the Purchase Agreement, Signature will take over the management of the operations of the business from Mission Point Management Services, LLC, for the benefit of the Debtor, pursuant to the terms of the Management Agreement for the time period set forth in the Management Agreement (the "Interim Management Period"). During the Interim Management Period, the Debtor's accounts receivable will be collected in the ordinary course of business, that the proceeds of the accounts receivable will be used for the operations of the Debtor's facility. For clarity, post-Closing, any claims of the DHHS that are not satisfied from the assets of the Debtor, including the accounts receivable of the Debtor, the liability of Buyer with respect to any DHHS claims is limited to the Hold Back Amount as modified by section 16 of this Order.

**ADDITIONAL PROVISIONS**

18.     The consideration provided by Buyer for the Assets under the Purchase Agreement is fair and reasonable and may not be avoided under Bankruptcy Code Section 363(n).

19.     The Transaction has been, and is undertaken by the Debtor and the Buyer in good faith, as that term is used in Section 363(m) and 364(e) of the Bankruptcy Code and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Transaction will not affect the validity of the sale of the Assets to Buyer or any debt incurred by Debtor under the Management Agreement, unless such authorization is duly stayed pending such appeal.  Buyer is in all respects a good faith purchaser of the Assets and Buyer is in all respects a good faith lender, and Buyer is therefore entitled to all of the benefits and protections afforded by Section 363(m) and 364(e) of the Bankruptcy Code.  In the event of any stay, modification, reversal or vacation of this Order, then notwithstanding any such stay, modification, reversal or vacation, all obligations incurred by the Debtor under this Order, the Purchase Agreement, or the Management Agreement, including any indebtedness incurred under the Management Agreement, prior to the effective date of such stay, modification, reversal or vacation will be governed in all respects by the original provisions of this Order, and the Buyer will be entitled to the rights, privileges and benefits granted in this Order with respect to all such obligations.

20.     This Court retains jurisdiction to:

        (a)     Interpret, implement, and enforce the terms and provisions of this Order and the terms of the Purchase Agreement, all amendments thereto, and any waivers and consents thereunder, and of each of the agreements executed in connection therewith to which Debtor is a party or that has been assigned by Debtor to Buyer;

(b)     Protect Buyer or any of the Assumed Contracts or Assets against any of the Liens or Interests (other than the Permitted Exceptions), as provided herein, and to enforce the injunctions provided herein with respect to the commencement or continuation of any action seeking to impose a successor or other liability upon the Buyer;

(c)     Enter orders in aid or furtherance of the Sale and the Transaction;

(d)     Compel delivery of all Assets to the Buyer;

(e)     Adjudicate any and all remaining issues concerning Debtor's right and authority to assume and assign the Assumed Contracts and the rights and obligations of Buyer with respect to such assignment and the existence of any default (including any cure amounts) under any such Assumed Contract;

(f)     Adjudicate all issues concerning any actual or alleged Liens or Interests in and to the Assets, including the extent, validity, enforceability, priority, and nature of all such actual or alleged Liens or Interests; and

(g)     Except as expressly provided for herein, adjudicate any and all issues and/or disputes relating to Debtor and title or interest in the Assets and the net proceeds of the Sale, the Sale Motion, and/or the Purchase Agreement.

21.     All Liens and Interests of any kind or nature whatsoever existing as to the Assets prior to the Closing (other than Permitted Exceptions) have been unconditionally released, discharged, and terminated as to the Assets, with such Liens and Interests to attach to the net proceeds of such Sale, and that the conveyances described herein have been effected and will be binding upon and will govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state,

federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record, or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Assets.

22.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

23.     All persons or entities that are presently, or on the Closing Date may be, in possession of some or all of the Assets are hereby directed to surrender possession of the Assets to the Buyer on the Closing Date.

24.     The Buyer will have no liability or responsibility for any liability or other obligation of the Debtor of any kind arising under or related to the Assets or the Excluded Assets other than the obligations arising under the Management Agreement.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the Purchase Agreement, the Buyer will not be liable for any claims against the Debtor or any of its predecessors or affiliates, except as expressly set forth in the Purchase Agreement as an Assumed Liability and the Buyer will have no successor or vicarious liabilities of any kind or character, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtor or any obligations of the Debtor arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way, relating to the operation or transfer of the Debtor's business or assets prior to the Closing Date, or obligations in any way relating to collective bargaining agreements between the Debtor and any party, or any other

obligations relating to current or former employees, or retirees of the Debtor. The sale of the Assets pursuant to the Purchase Agreement and this Order will not give rise to any claims for severance against, or trigger any other employee benefit not otherwise payable in the ordinary course by the Debtor to any employee of the Debtor whose employment is continued by the Buyer after the Closing Date.

25.     If any person or entity that has financing statements, mortgages, mechanics liens, *lis pendens*, or other documents or agreements evidencing Liens or Interests against the Assets and will not have delivered to Debtor and Buyer prior to Closing, in proper form for filing and executed by the appropriate parties, releases of all such Liens or Interests that the person or entity has with respect to the Assets, then: (i) Debtor or the Buyer are authorized to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Assets; and (ii) Buyer is hereby authorized to file, register, or otherwise record a certified copy of this Sale Order that once filed, registered, or otherwise recorded, will constitute conclusive evidence of the release of all Liens or other Interests in the Assets as of Closing, of any kind or nature whatsoever.

26.     The terms and provisions of the Purchase Agreement, the ancillary agreements, and this Sale Order will be binding in all respects upon, and will inure to the benefit of Debtor, Buyer and its respective affiliates, successors and assigns, and any affected third parties, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code or conversion of this case to a case under Chapter 7, and to trustee(s) such terms and provisions will likewise be binding. The Purchase Agreement and the Transaction may be specifically enforced against, and will not be subject to rejection or avoidance by, Debtor or any Chapter 7 or Chapter 11 trustee of Debtor.

27.     The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment, or supplement does not have a material adverse effect on Debtor or Debtor's estate.

28.     The failure specifically to include any particular provisions of the Purchase Agreement or the ancillary agreements in this Sale Order will not diminish or impair the effectiveness of such provisions.  It being the intent of the Court that the Purchase Agreement and the ancillary agreements be authorized and approved in their entirety.

29.     To the extent of any inconsistency between the provisions of this Sale Order, the Purchase Agreement, and any documents executed in connection therewith, the provisions contained in the Purchase Agreement and any documents executed or delivered in connection therewith will govern, provided, however, that the terms in paragraphs 35 and 36 will always control over any other provision of this order or the Purchase Agreement.

30.     Nothing contained in any Chapter 11 plan confirmed in this Chapter 11 case or any order of this Court confirming such plan or any other order entered in this Chapter 11 case (or any converted Chapter 7 case) will conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Order.

31.     In the event that this Chapter 11 case is dismissed or converted to a Chapter 7 case, or a trustee is appointed (whether under Chapter 11 or 7), neither the dismissal or conversion of this case, nor the appointment of such a trustee, will affect in any manner the rights of Buyer under the Purchase Agreement or this Sale Order, or any other agreements executed by Debtor in conjunction with the Sale and the Transaction, and all of the rights and

remedies of Buyer under the Purchase Agreement, Sale Order, and all other related or ancillary agreements executed in connection with the Transaction will remain in full force and effect as if the case had not been dismissed or converted or a trustee had not been appointed.

32. The provisions of this Sale Order are non-severable and mutually dependent.

33. Nothing contained herein will impair the rights of Green Mountain Finance Fund, LLC, Ability Insurance Company, Garfield Holdings, LLC or their respective assignees (collectively, "Green Mountain") under the Order Confirming Debtors' Plan of Reorganization and Granting Final  Approval of Debtors' Disclosure Statement (the "OCP") filed at Docket No. 245 in the Bankruptcy Case *In re Shanta Corp. et. al.*, Bankruptcy Court Case No. 12-43956-TJT; including, without limitation, Green Mountain's rights to payments under ¶13(B) of the OCP, provided however that any liens, encumbrances and other security interest of any kind with respect to any of the assets of the Debtor Shanta Corp. are hereby released.

34. Buyer agrees to pay $9,000 as a deposit to the City of Detroit Water and Sewerage within ten business days from September 1, 2015, or the date that the Buyer assumes interim management responsibilities under a Management Agreement, which deposit will be held in the name of the Buyer and transfer to any new or additional accounts established by the Buyer with the City of Detroit Water and Sewerage upon or after Closing.

35. Notwithstanding any provision in this order, incorporated documents or any other order in the bankruptcy case to the contrary, the Debtor will assume and cure the defaults on each of its Medicare executory contracts ("Assumed Medicare Executory Contracts"), effective on or before the proposed date of sale.  Such Assumed Medicare Executory Contracts will include each of the Debtor's Enrollment Agreements.  The Debtor's assignment of the Assumed Medicare Executory Contracts to the Buyer is subject to CMS's approval and requires that the

Debtor and the Buyer submit their respective proper change of ownership forms and paperwork to CMS. Notwithstanding anything to the contrary in this order, any incorporated documents, or any future order of the Court, "cure," for purposes of the assumption by the Debtor and Buyer of the Assumed Medicare Executory Contracts, will consist of the agreement by each the Debtor and Buyer to continue participation in the Medicare program in the ordinary course of business, and to be governed by, and subject to, the terms and conditions of its Medicare Executory Contracts and the incorporated Medicare statutes, regulations, policies and procedures, and to remain liable for any debt to CMS as if the bankruptcy case had not occurred. Nothing in this order or any order entered by the Court will be interpreted to the contrary. Such terms and conditions under the Assumed Medicare Executory Contracts will include, but will not be limited to, the recoupment or recovery by CMS or its contractors of any Medicare overpayments determined to be due now or in the future from the Debtor or Buyer, whether related to prepetition or post-petition services, in accordance with the Medicare statute, regulations, policies and procedures. In addition, nothing in this order, any incorporated documents, or any future order of the Court will release (or operate to enjoin) any claim of the United States, on behalf of CMS, against the debtor or against any non-debtor, including Buyer. The assumption and cure of the Assumed Medicare Executory Contracts, or any rights or remedies thereunder, will not be subject in any manner to, or limited in any manner by, any provision of the Bankruptcy Code or Rules or any term in this order, incorporated documents, or any future Plan of Reorganization; this includes, but is not limited to, any purported grant of an interest to other parties in the Debtor's or Buyer's healthcare accounts receivable. Furthermore, because any amount due will be collected in the ordinary course, the United States, on behalf of CMS, will not be required to file any separate claim in the bankruptcy to collect any amounts due to CMS

under the Medicare program, whether via a proof of claim, claim for cure, or administrative claim. All of CMS's claims will be unimpaired under 11 U.S.C. § 1124 and will pass through the bankruptcy case unaffected by this order, any incorporated documents, and/or any other court order in the bankruptcy case.

36.     Notwithstanding any provision in this order, incorporated documents, or any other order in the bankruptcy case to the contrary, the United States and the Debtor, in addition to the Buyer, agrees that any claims arising under the Medicare Act are removed from the Bankruptcy Court's jurisdiction by 42 U.S.C. §§ 405(h) and 1395ii.  After exhaustion of statutorily required administrative remedies pursuant to the exclusive jurisdictional provisions of the Medicare Act, which include, but are not limited to, 42 U.S.C. § 1395oo, any dispute as to the final administrative decision of the agency must be heard by the federal court designated by the Medicare Act.  Accordingly, the Debtor and Buyer agree that under the terms of this order, they cannot and will not seek relief from this Bankruptcy Court that is contrary to the provisions of the Medicare Act or the duly promulgated regulations thereunder.

37.     With respect to the Internal Revenue Service, nothing in the order, incorporating documents, or any future order of the Court may be interpreted by any party to impact on the ability of the Internal Revenue Service to assess, collect, or otherwise determine the tax liability (whether in the form of taxes, penalties, and/or statutory interest) of any officer, employee, or other responsible party of the Debtor.  Moreover, nothing in this order, incorporated documents, or any future order will seek to predetermine any tax consequence that is contrary to the IRS's rights to duly assess, collect, or otherwise determine any tax liability.

Signed on August 31, 2015                     /s/ Thomas J. Tucker_____
                                               Thomas J. Tucker
                                               United States Bankruptcy Judge